**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEORGE DESALES MORSE, | No.   15-15659 |
| Petitioner-Appellant, | D.C. No. 3:12-cv-00038-HDM-WGC |
| v. | |
| NEVADA ATTORNEY GENERAL; PALMER, | MEMORANDUM[*] |
| Respondents-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted September 13, 2016
San Francisco, California

Before:  GOULD and BERZON, Circuit Judges, and TUNHEIM,[**] Chief District Judge.

Petitioner George Morse appeals the denial of his petition for writ of habeas corpus.  We affirm.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, sitting by designation.

1. On direct appeal, the Nevada Supreme Court held Morse's confession properly admitted under *Missouri v. Seibert*, 542 U.S. 600 (2004), because the *Miranda* warning effectively apprised Morse of his rights before he confessed. The Nevada Supreme Court's adjudication of Morse's *Seibert* claim did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Under Justice Kennedy's controlling *Seibert* concurrence, *see Reyes v. Lewis*, 833 F.3d 1001, 1028 (9th Cir. 2016), "[i]f the deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made," *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring in the judgment). "Curative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver." *Id.*; *see also United States v. Williams*, 435 F.3d 1148, 1157 (9th Cir. 2006) ("[A] trial court must suppress postwarning confessions obtained during a deliberate two-step interrogation where the midstream *Miranda* warning—in light of the objective facts and circumstances—did not effectively apprise the suspect of his rights.").

The Nevada Supreme Court did not cite Kennedy's controlling concurrence in *Seibert* or address the deliberateness question it poses. But it did address the "curative measures" issue or its equivalent. In doing so, the state court considered appropriate factors for determining whether the *Miranda* warning, when given, enabled Morse to "understand the import and effect of the *Miranda* warning and of the *Miranda* waiver." *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring in the judgment); *see also Reyes*, 833 F.3d at 1027-28. Consistent with those factors, the Nevada Supreme Court analyzed the nature of the pre-warning and post-warning interrogations, contrasting their formality and the topics covered, and concluded that the *Miranda* warning, when given, was "effective" and provided Morse with a "genuine choice" whether to speak or remain silent.

We cannot conclude that, in doing so, the Nevada Supreme Court's decision was an unreasonable application of *Seibert*. The state court's opinion was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

First, unlike in *Seibert*, *Williams*, and *Reyes*, the pre-warning interrogation was neither complete nor detailed. With some probing from Detective Smith, Morse conveyed in general terms that he had made a mistake, that he did not consider himself a "big molester," and that he told his wife he was sorry for

3

something he had done to his granddaughter.  In contrast, in the post-warning interrogation Morse confessed in detail to the incident with his granddaughter.

Second, because the post-warning interrogation was considerably more comprehensive and detailed than the first, the content of the two interrogations overlapped only minimally.  In both interrogations, the topic of molestation was raised, and Morse indicated that he regretted an incident with his granddaughter and that he had told his wife he was sorry in a phone call.  Apart from that repetition, the second interrogation produced new information.

Third, it was reasonable to conclude that Detective Smith did not treat the post-warning interrogation as continuous with the first.  She referred to the car ride conversation at the start of the post-warning interview, asking Morse to tell her what the phone call with his wife had been about, and reminding him that she had told him in the car that he was not a monster.  Later in the conversation, Detective Smith twice more reminded Morse that she had told him in the earlier conversation that she did not think he was a monster.  With these references, Detective Smith acknowledged that the car ride conversation took place.  But, unlike in *Seibert*, the postwarning interview did not "resemble[] a cross-examination" on what Morse had said earlier, and Detective Smith did not "confront[] [Morse] with [his] inadmissible prewarning statements and push[] [him] to acknowledge them."

4

*Seibert*, 542 U.S. at 621 (Kennedy, J., concurring in the judgment). Additionally, as the Nevada Supreme Court stressed, the car conversation was informal and wide-ranging, while the postwarning interview was formal and directed.

Some factors weigh against finding the *Miranda* warning effective and therefore curative. Detective Smith conducted both interrogations, and both took place in a custodial setting after Morse was placed under arrest, albeit in different contexts and locations. The second interrogation also followed closely after the first.[1] Moreover, the intervening neutral topics of conversation in the police car, although they may have served to relax Morse, may not have contributed to making the *Miranda* warning effective. As a result, were we reviewing the case de novo, we might well have concluded that the "break in time and circumstances between the prewarning statement and the *Miranda* warning," was insufficient to ensure that Morse could "distinguish the two contexts and appreciate that the interrogation ha[d] taken a new turn." *Id*. at 622. Likewise, at no point did Detective Smith warn Morse that his statements in the police car were likely inadmissible. *See id*. ("[A]n additional warning that explains the likely

---

[1] The length of time between the conversation in the police car and the interrogation at the police station is unclear. The District Court assumed the second started "soon after" Detective Smith and Morse arrived at the police station.

inadmissibility of the prewarning custodial statement may be sufficient [as a curative measure].").

Nevertheless, under the deferential AEDPA standard, we cannot say that the record as a whole shows the Nevada Supreme Court unreasonably applied *Seibert*. *See* 28 U.S.C. § 2254(d)(1). Accordingly, we affirm the district court's denial of Morse's habeas petition with respect to the *Seibert* claim.

2. The Nevada Supreme Court's determination that Morse's sentence does not violate the Eighth Amendment was likewise not "an unreasonable application of[] clearly established Federal law." *See id*. Morse's sentence—life in prison with the possibility of parole after 35 years—while severe, is not "grossly disproportionate" to the grave crime of sexual assault of a minor. *See Graham v. Florida*, 560 U.S. 48, 60 (2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)); *Ewing v. California*, 538 U.S. 11, 23 (2003). No intra- or inter- jurisdictional comparison of sentences is required here because this is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in the judgment).

3.  Finally, the Nevada Supreme Court's holding that the prosecution's late production of the sexual assault examination report did not violate Morse's due process rights was not an unreasonable application of *Brady v. Maryland*, 373 U.S. 83 (1963).  *See* 28 U.S.C. § 2254(d)(1).  A *Brady* violation occurs only if: (1) the evidence is favorable to the accused; (2) the State suppressed the evidence; and (3) the evidence is material such that prejudice ensued.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The sexual assault examination report was not favorable to Morse.  The reported absence of evidence of physical trauma was consistent with the charged conduct.  Moreover, the report's characterization of M.B. as "advanced" and "cooperative," even if favorable to Morse, was not material, because a defense of consent by a three-year-old to sexual assault would have been unavailing.

**AFFIRMED.**